Your Honors, Andrew Chang for Appellant Gary Nakauchi. I think the starting point in today's analysis has to be a focus on Allstate's duty to defend in this case. And that duty, as the Court knows, is governed by an extremely broad and flexible standard. I'll get to that in a moment. That has to do with, of course, whether there is any conceivable possibility that a claim by the third party falls within the policy. It's an extremely broad standard. I'll discuss that later. The district court in this case even could not tell that standard was met by the face of the complaint. But Allstate, throughout the briefing and even prior to that, wants to focus only on the plaintiff's conduct in this case. Obviously, for the negative adverse effect it has on the legal issues. But as a... We understand. We've had these cases all week and many years. We understand under California law that the duty to defend is incredibly broad. Yes. Let's start with a preliminary question. Is your client an insured person under the policy? Yes, he definitely is. Why? Why? Because he is a resident as a relative and a son. He's a resident of the parent's household. The parents are the owners and insureds of the policy. But they have a different household, don't they? No, they have two households. They have a house that they have in Covina, and they have a house in Brigante that they specifically had the both sons permanently reside in. Now, the definition of household, which is not in the policy, but of course the courts have dealt with this over many years, the definition of household varies according to the circumstances of each case. There are cases involving kids in the military that are gone for a while. There are kids temporarily living with a stepparent. Do you have any case where they lived in a separate house that was not part of the curtilage? This is that case. This is the only case. This is the only case we've been able to find. And there's no case that says that that's not qualified as a household. Now, what I want to do, though Are there cases that define household? There are cases that have attempted to define household as applicable to the facts of those cases. We don't have a case out there with facts like these. We don't. So this is a case of first impression on that issue. And what I wanted to do with that issue, since we'll deal with that first, is you have to look at the policy itself. What is the intent, the mutual intent of the parties in defining who the insured is and who other than the named insured might fall under that definition? Now, if you look at that provision, which has to do with, again, defining who the insured is, it first says the insured are the parents in this case. Okay? So we know the parents are insured. Even though Allstate knows very well that they live and are insured in a house in Covina, they have now bought a house in Diamond Bar in Bragante, and they know that these parents own that house. And so the question then is, they're insured. Now, who else is insured? And you look at the policy provision on insured and the next possible insured under the policy, without going any farther than this provision, is a resident of your, meaning the parents' household, if a relative. Now, what is the purpose of that provision where, in this case, you have parents who buy a house owned by them, again, for the specific purpose of having their child, and nobody else lived there. They're not renting it out. It's specifically for their son, a relative. Now, then the question is, okay, how do you construe that? We don't have a case out there that construes it. And our position is, under the case law that favors, of course, the reasonable expectations of the parties, especially when a term is not defined in the policy, what does that mean that I want this policy for this reason? She expected, for the purpose of this policy on this fax, that household would mean I am, and my husband, this is our household here. It's our household in Covina, too, which you know. But this is our household here as well. That's not how California courts define household. California courts have never defined a household with these fax. The definition in Jacobs v. Fire Insurance Exchange, there the linchpin seems to be living together under one roof, whether you're related or not. That was the issue in that case. But that case did not have the issue we have here, where you have two households. Now, albeit this is a... They're two households, and they're not living in the same household. That's not two households. That's two houses. You have two houses, but you don't  Right. But this policy... One household. Well, no. But for this policy, this policy only insured that Brigante household. It wasn't... It insures the named insureds. That's right. But it also insures damage to the property that... Residents of their household. Yes. Singular. Absolutely. And the parents live in one house. The son lives in another house. They're not in the same household. Well, they are for the purpose... Yes. When they have two family homes and... They have two residence places, houses. Yes. Okay? Yes. They're both owned by the parents. They're both insured by the parents. Yes. And they are named insured. Separately insured. Yes. Yes, they are. So we're not talking about the parents' coverage. We're talking about coverage for the son. Well, we're... That's right. All right? That's right. So the only way he can qualify for coverage is to be the resident in a household where the parents reside. That's not what it says. That's not what the... Well, the policy doesn't say that. If it did say that, if Allstate had defined it in that way, we wouldn't be here perhaps. But it didn't define it that way. It says resident... It doesn't define it any other way. Well, no. I was just going to tell you how it defined it. It says resident of the parents' household. That's what it says. That's what it just went through. Well, no, but no. Resident of parents' household. No, it doesn't mean that they have to live there. There's nothing in this Braganti policy that says the parents have to live in this house. And, in fact, that's exactly why they bought this family home. They didn't... They weren't... That means it's undisputed. They weren't going to live there. All right. Perhaps you should move on to the next issue of that, whether or not this is an accident or a criminal... All right. I will do that, Donna. Thank you. Where I was going to go is the Supreme Court of California, and I think this Court would agree, you can't allow legal reasoning on this duty of defense issue to yield to emotionalism. And I think that's throughout what all State has done in this case. Undisputed, this was a tragic act which damaged Ms. Kwan significantly. And he has accepted, the plaintiff has accepted, you know, full responsibility. He pled to that. He's in prison now. He's in a mental facility. But, you know, the issue here is exactly that. All State has always thought this was a simple case of an intentional act, period. But doesn't the conviction take care of the criminal act? No, not at all. It does take care of that act of the beating. But there was a separate act that was pled in the third party's complaint against Gary Nakaluji. Have you got the negligent failure to take his medication? That was a negligent failure to take medication, which, you know, that's not a minimal issue, because, in fact, that goes to the heart of why in California and most jurisdictions mental capacity is a litigable issue, even if that mental capacity causes somebody to apply a beating, an assault, a battery, or even a killing on another person. That's the Klemmer case and the Sholof case. Klemmer goes to insanity. Sholof goes to diminished capacity. Now, remember, and we're not talking about the end result here, the ultimate result, whether there was coverage. We're only talking about the duty to defend. And whether there was any conceivable possibility that that claim of that negligent, of that act, especially where the complaint pled on its face, that he failed to take the medication, and this beating was a result not of just some angry dispute, but he had a mental condition that he was being treated for. That raised a possibility, at least a possibility, that there was an issue here that needed to be investigated. The district court, when it denied the motion to dismiss, said, I can't tell from the face of this complaint whether there's any conceivable possibility. What else is there? When Allstate came in with the summary judgment motion, they came up with nothing other than the complaint. Yes, Allstate took the statement of the mother, took the statement of the plaintiff in the facility, but never asked a single question about that litigable issue. Never. So there were no new facts that came to the attention of Allstate. Allstate just simply said this was an intentional beating. That's all. We're not going to do anything more about this. And that's why it's important in this case and beyond that where there is a litigable issue, whether or not it's going to ultimately prevail. This raises in the insurance company just a reasonable duty to investigate, to determine if truly this is a litigable issue, or maybe it's not. But Allstate never took even the first step to determine that. And that's why this case is wrong on the duty to defend analysis. And then finally, I just wanted to say, reserving some time for rebuttal, is that the two cases cited by Allstate in a recent letter to the Court, in particular, the Safeco decision is actually a very helpful case for our position, because it really emphasizes that the issue must be confined to what the insurance company knew at the time it denied defense. In that case, of course, if the Court recalls, the insurance company did do an investigation. But when it investigated, the insureds misrepresented facts to the insurer. And those facts, of course, showed that there was no duty to defense, to defend. And so later on, when the insured said, well, wait, I've got more facts here, we changed our minds. It really didn't mean what we said in the first place. The Court said, sorry, you're out of luck. It's got to be determined by what the company knew at the time. In this case, the company knew nothing. It just knew that there was a beating, and that was good enough for Allstate. And on the law in California, that is not good enough to deny defense. I'd like to save the remaining time for rebuttal. All right. You may. Thank you. Good morning. Seth Friedman on behalf of the defendant at Allstate Insurance Company. I would like to begin at the beginning where the Court did, which is the threshold issue of whether appellant was an insured person under this policy. He was not a named insured, as the Court has already recognized. That means that under the terms of the policy, he had to be a resident of the named insured's household. That phrase has been construed repeatedly by California courts. It's been held to be unambiguous. A household is a group of people who live together under one roof or within a common curtilage. That plainly does not apply to this situation. Appellant had moved out of his parents' house nearly two years before the incident and had continuously lived apart from them. The policy doesn't say a resident of a house you own, a resident of the insured premises. It says resident of your household. Once a term like resident of your household has been construed by California courts, it is therefore deemed unambiguous and part of the policy as the Court in Collin held as the California Court of Appeal case. There may be some difficulty in certain situations in applying that fixed definition to the particular facts of the case, but that's not this case. In this case, the appellant who is seeking coverage under a policy under which he was not the named insured, did not live with the named insured's under one roof or within a common curtilage. Therefore, he was not an insured person under the policy, and that should be the end of the inquiry. But moving on, let's assume for the sake of argument that appellant was an insured person under the policy. He has to establish as a person seeking coverage that his conduct in this case was a potentially covered accident. Now, the cases that appellant has cited saying that his mental condition is an issue that should be mitigated are completely an opposite. He primarily relies on Rodeff-Shalom. That case arose under a statutory exclusion, Insurance Code Section 533 for Willful Acts. It is a completely different inquiry. Moreover, Rodeff-Shalom is not even good law in California. It was disapproved of by the California Supreme Court in J.C. Penney, and another case called Jacobs v. Fire Insurance, which is not the Jacobs, that deals with the residence issue, basically explained in detail by Rodeff-Shalom was not even good law on the point that it discussed. In any event, courts have repeatedly recognized, in particular the Quan Court in the Court of Appeal, the California Court of Appeal case, that the inquiry is totally different when you're deciding whether something is an accident as opposed to whether it is an excluded willful act under Section 533. The burden is on the person seeking coverage to establish that the conduct is potentially an accident. Whether something is an accident depends on the nature of the conduct alleged against the person seeking coverage, not on his state of mind or motivation in committing the act. Here, the nature of the conduct was horrible. Appellants beat up and tortured Tanya Quan over a period of hours. Okay. Okay. The Court's obviously familiar with the facts. That conduct can happen by accident. You don't accidentally hogtie someone. You don't accidentally threaten to kill someone. It was deliberate. Now, Appellant says all State conducted no investigation. That is simply not true. All State went out and interviewed the Appellant, found out what he says he did. He discussed in great detail what he did. Everything he did was deliberate and purposeful. He knew what he was doing when he did it, and he had reasons for doing it. Now, those reasons may not have been rational, but his conduct was deliberate. And as deliberate conduct, it could not possibly be an accident under any stretch of the imagination, under any application of California law. Therefore, his conduct could not potentially be covered in the first place. But putting that aside and assuming that it could somehow potentially be covered, there is the criminal act exclusion, as the Court mentioned. The California Court of Appeal ensures, held, that once there is a conviction for the conduct that the insured is now being sued for civilly, that is the end of the inquiry under the criminal act exclusion. It held that the criminal act exclusion is unambiguous and that it applies without regard to the insured's intent, which is also what the policy says. Here, the time that the claim was made to Allstate, appellant was sitting in jail serving an eight-year prison term, having been convicted of two felonies. That was the end of it. When you have a policy that says we exclude criminal acts, and the appellant is sitting in jail because he pled guilty or no will contend right to two criminal acts, that is the end of the inquiry under California law, again, another reason there was no potential coverage in this case and no duties to defend. Next, the policy also has an intentional act exclusion, which applies without regard to the insured's mental capacity to control his conduct. That provision applies if the insured intended to harm or intended conduct which was reasonably expected to result in harm. The California courts have held that there is certain conduct that, when intentionally engaged in the intent to harm, is inferred. For example, in Altieri, punching someone in the face without legal justification. Again, the court is obviously familiar with the facts of the case, this case, and knows that appellant did a lot more than punch Ms. Kwan in the face. Therefore, his conduct could not potentially be covered because it would have fallen within the intentional act exclusion. Finally, if by some strange set of circumstances the court were to find that his conduct was potentially covered or that the appellant was an insurer, there was certainly no bad faith here, starting with the question of whether this was a situation where the person who was not named insured on the policy could be uninsured. Allstate at the time it made its decision had California law on its side, defining household clearly, not ambiguously, as a group of people who live together under one roof or within a common curtilage. It was not unreasonable for Allstate to apply that law in this case and find that appellant was not an insured person under the policy. And in particular, counsel has noted that or has said that there's no California law or no lawifying what it means to have a household if the named insured does not live at the household. We did cite a case in our papers, albeit an unpublished California court of appeal case, that dealt with precisely this issue. And it held straightforward application of what a household means. It means that people all have to live together under one roof or within common curtilage. It doesn't matter if the named insured lives at a location away from the insured premises. If they don't all live together, the person seeking coverage is not a resident of the named insured's household. Whether there was bad faith in deciding that there was no potential coverage for the named insured or whether there was bad faith against the appellant, we cited the Dalrymple case. The facts are pretty much identical. The Court held as a matter of law the insurance company did not act in bad faith when it denied coverage and a defense to an insured who in a psychotic state shot someone. The Court strongly suggested that that conduct could not be a covered accident, although that issue was not before the Court. Putting that aside, the fact that the California court of appeal came out with the possibility of coverage under the policies of criminal acts exclusion. I think you're kind of repeating things now. Okay. I will conclude my remarks unless the Court has any questions of me. No. Thank you, counsel. I want to first deal with the issue of the household provision. And the first thing I wanted to point out is if this home at Brigante was not the parent's household, then whose household was it? It would be nobody's household. And so why does that provision make no sense? Weren't they both living there, the girlfriend in front of me? Weren't they both living there? The girlfriend as well? Yeah. Oh, I'm not sure about that. I don't know. She may have been living there, but the point is it's. Well, there are a couple of people living in the household, but they just weren't insured, so that's all. Well, but the policy says your household. The policy is what I'm looking at. I'm not making anything up outside the policy, but to make sense of the policy, the policy says. Your. The insurer's. Yes. The parent's household. This is your household. And that's why this case is distinguished from all the cases of all State sites, albeit I know it's, you know, these are first impression facts. In this case, there's no dispute that the person claiming coverage resided at these premises. In every one of these other cases, that was the struggle the courts had. The person didn't live at the insured premises. So, of course, the courts had to go through all kinds of hoops and circles in order to try to extend coverage to somebody who actually didn't live there on the premises. This son was the only person who resided in that household. And that's why when the policy says this is your, the parent's, Mr. and Mrs. Nakaguchi's household for purposes of this policy, if your son or some other relative lives in this household, they're insured. And that makes sense because that is the person who lives in the premises, other than the owners who live, of course, in the other family home. On the issue of duty to defend, you know, Shalom is still good law. The only note that cases subsequent to Shalom have said is Shalom was only talking about the insurance code section at the time because, in fact, there was no policy provision which provided for intentional exclusions in that policy, in that case. But so it doesn't change the fact that whether it's the policy provision or statute, if either of them excludes intentional acts, the issue of diminished capacity is still a litigable issue. And even aside from Shalom, you still have the Klemmer case, the Supreme Court case, that talked about insanity as a litigable issue. And, again, this issue applies whether it's brought under the statute exclusion or now policy exclusions. So that is good law. And counsel, again, keeps referring to this was no accident and then refers to this beating. We're not, you know, again, accident doesn't mean, maybe he's not implying this, but accident doesn't only mean slip and fall. And we're not claiming that he slipped and fell and hurt her. It was a beating that was not like that at all. What we are saying, though, is that the capacity that he had was so diminished from his mental condition, not from drinking or taking recreational drugs like other cases, not because he was claiming self-defense, but because he lacked the capacity to appreciate the consequences of his actions. And that's what was a litigable issue, whether or not we would ultimately prevail on that issue. And so that's why it's – and especially when you look at the broad nature of the duty to defend as being the insurance company must defend unless it eliminates any conceivable possibility that this was not an intentional act. And since there was a litigable issue on this, since the only thing Allstate had before was the complaint and nothing else, and even Judge Collins agreed earlier on that the face of the complaint didn't provide her enough confidence to be able to say that the company did not have a duty to defend based on the complaint, if she found that same thing, Allstate could not possibly have drawn the same confident conclusion just from the complaint. So with that, Your Honors, unless you have any questions, I would submit. Thank you. The case of Nacucci v. Allstate is submitted. We'd like to hear from counsel on Weinreb v. Pacific Care. Have you settled this case? Yes, Your Honor. You have settled it. So what do you want us to do? We would submit that if the issues are moved and you agree to dismiss the case with prejudice at this point, we apologize for the late settlement. Are both counsel in agreement that the Court is not to fix any costs or fees in connection with the settlement of this case or at the trial level? Yes, Your Honor. Yes, Your Honor. So dismiss the case with prejudice in light of settlement, and you have reconciled  Yes. Yes, Your Honor. We've settled it in full and entirety, so there's no issue with regard to costs or fees. Would it be possible for you to submit a joint stipulation saying exactly that, and then we will dismiss the case based on the stipulation? We have it on tape. You have it on tape? That's sufficient? Yes. All right. That's sufficient. All right. Well, thank you, counsel.
judges: Beezer, Hall, Wardlaw